## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NEWPORT NEWS DIVISION

CHRISTIAN PARKS,

*Plaintiff,*

v.

The Members of the State Board of the Virginia Community College System—BRUCE J. MEYER, DORCAS HELFANT-BROWNING, BENITA THOMPSON BYAS, DARREN CONNER, JAMES CUTHBERTSON, LAVONNE ELLIS, IDALIA FERNANDEZ, ROBERT R. FOUNTAIN, STEPHEN GANNON, SASHA GONG, MIRTA M. MARTIN, DAVID NUTTER, ROBIN SULLENBERGER, MIKE THOMAS, MICHEL ZAJUR, all in their official and individual capacities; GLENN DUBOIS, Chancellor of the Virginia Community College System, in his official and individual capacities; JOHN T. DEVER, President of Thomas Nelson Community College, in his official and individual capacities; DANIEL LUFKIN, Vice President of Student Affairs at Thomas Nelson Community College, in his official and individual capacities; VICKI RICHMOND, Associate Vice President of Student Affairs for Thomas Nelson Community College, in her official and individual capacities; KADISIA ARCHER, Coordinator of Student Activities at Thomas Nelson Community College, in her official and individual capacities; KELVIN MAXWELL, Chief of Campus Police at Thomas Nelson Community College, in his official and individual capacities; and FRANK JOHNSON, law enforcement officer at Thomas Nelson Community College, in his official and individual capacities.

*Defendants.*



Case No. 4:14CV30

## VERIFIED COMPLAINT

Plaintiff Christian Parks, by and through counsel, and for his Complaint against Defendants,

hereby states as follows:

## INTRODUCTION

1.    The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus. That marketplace depends on free and vigorous debate and expression between students—debate and expression that is spontaneous, ubiquitous, and often anonymous—and is carried out through spoken word, flyers, signs, and displays.

2.    By policy and practice, Thomas Nelson Community College (TNCC) and the Virginia Community College System (VCCS) claim the unchecked right to restrict the free speech rights of students and to regulate the location of student expression and assembly on campus. TNCC—implementing VCCS policies—requires students to obtain administrative permission to speak in the outdoor venues of campus four days in advance, and it then gives administrators unbridled discretion in assigning locations where students may speak. Through the permitting process, TNCC retains unfettered discretion to determine both whether students may speak at all and where they may speak. In so doing, it fails to protect students against content and viewpoint discrimination. These policies and practices—from both TNCC and VCCS—chill protected student speech and disable spontaneous and anonymous student speech on campus.

3.    When Plaintiff Christian Parks, a student at TNCC, sought to preach and discuss his religious views in an open, outdoor plaza on campus, TNCC officials required him to stop in part because his speech might offend someone and later told him that he would have to notify TNCC officials at least four days before he wished to speak and that he must join a student organization in order to submit this notification.

4.    Defendants took these actions because of the content and viewpoint of Mr. Parks' expression, because they feared his expression would prompt complaints, and because they wanted to pacify those who might be offended by his expression. In taking these actions, they implemented the challenged VCCS and TNCC policies, violated Mr. Parks' constitutional rights, and inflicted irreparable injury upon him.

5.    This action is premised on the United States Constitution and concerns the denial of

Mr. Park's fundamental rights to free speech, free exercise of religion, due process, and equal protection of law.

6.    The aforementioned policies and practices are challenged on their face and as applied to Mr. Parks.

7.    Defendants' policies and practices have deprived and will continue to deprive Mr. Parks of his paramount rights and guarantees under the United States Constitution.

8.    Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and authority.

## JURISDICTION & VENUE

9.    This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11.    This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys fees under 42 U.S.C. § 1988.

12.    This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and division and/or all of the acts described in this Complaint occurred in this district and division.

## PLAINTIFF

14.    Christian Parks is a resident of the Commonwealth of Virginia and a student at TNCC.

15. Mr. Parks is a professing evangelical Christian who strives to live out his faith on a daily basis.

16. Mr. Parks' Christian faith governs the way he thinks about marriage, morality, politics, and social issues, and it causes him to hold sincerely-held religious beliefs in these areas.

17. As an evangelical Christian, Mr. Parks believes that the Bible is God's Word and sets out the plan of salvation for all people. He believes that the Bible teaches that all people are sinners and therefore deserve God's wrath, but that anyone can receive salvation and eternal life by believing in Jesus Christ.

18. Because of his firmly-held Christian beliefs, Mr. Parks believes it is his duty to inform others, including members of the TNCC community, for their own benefit, that they have sinned and need salvation through Jesus Christ. He looks for opportunities to share his beliefs with his fellow students and community members.

19. Mr. Parks' message is purely evangelistic in nature. Through personal conversations, the distribution of religious tracts, and open-air preaching, he communicates in a loving way that all people (including himself) are sinners and that salvation and eternal life are available only through Jesus Christ.

20. Mr. Parks does not seek monetary gain with his expressive activity. He does not try to sell products or services, seek donations, or solicit signatures. He merely wishes for others to be exposed to his religious beliefs.

21. Mr. Parks' expressive activities do not create a disturbance or cause congestion. He merely wishes to express his religious beliefs peacefully, without being confrontational.

### DEFENDANTS

22. Defendants Bruce J. Meyer, Dorcas Helfant-Browning, Benita Thompson Byas, Darren Conner, James Cuthbertson, LaVonne Ellis, Idalia Fernandez, Robert R. Fountain, Stephen Gannon, Sasha Gong, Mirta M. Martin, David Nutter, Robin Sullenberger, Mike Thomas, and

Michel Zajur are, and were at all times relevant to this Complaint, members of the State Board of the Virginia Community College System (hereafter, "Board Defendants"), a public community college system organized and existing under the laws of the Commonwealth of Virginia.

23. These Board Defendants' duties include, among others, the adoption and authorization of polices that govern students (including the policies discussed and challenged herein) at all institutions in the Virginia Community College System (including TNCC) and the oversight of operation of VCCS.

24. The Board Defendants made the decisions to adopt and to continue enforcing VCCS policies regarding campus demonstrations.

25. The Board Defendants are sued in their official and individual capacities.

26. Defendant Glenn DuBois is, and was at all times relevant to this Complaint, the Chancellor of the Virginia Community College System, a public community college system organized and existing under the laws of the Commonwealth of Virginia.

27. As Chancellor, Defendant DuBois is the Chief Executive Officer of the VCCS.

28. The Board Defendants delegate to Defendant DuBois the responsibility for final policymaking authority concerning student free speech activities at TNCC.

29. Defendant DuBois is responsible for enactment, amendment, enforcement, execution, and implementation of all decisions of the Board Defendants and VCCS policies, including the policies and practices discussed and challenged herein.

30. Defendant DuBois possesses the authority and responsibility for coordination and approval of campus expression by students.

31. All changes in VCCS policies concerning student expression on campus are made only with the prior approval of Defendant DuBois.

32. Defendant DuBois has not instructed VCCS personnel to change or alter the policies and practices governing student expression on campus to comply with constitutional mandates.

33. Defendant DuBois is sued in his official and individual capacities.

34. Defendant John T. Dever is, and was at all times relevant to this Complaint, the

President of Thomas Nelson Community College—a public college organized and existing under the laws of the Commonwealth of Virginia and a constituent institution of the VCCS.

35. Defendant Dever's duties include, among others, authorizing, executing, enforcing, and implementing the policies governing students at TNCC and overseeing the operation and management of TNCC.

36. The Board Defendants delegate to Defendant Dever the responsibility for final policymaking authority concerning students at TNCC.

37. Defendant Dever is responsible for enactment, amendment, enforcement, execution, and implementation of TNCC and VCCS policies, including the policies and practices challenged herein.

38. Defendant Dever possesses the authority and responsibility for coordination and approval of campus expression by students on campus.

39. All changes in campus policies concerning student expression are made only with the prior approval of Defendant Dever.

40. Defendant Dever has not instructed TNCC personnel to change or alter the policies and practices governing student expression on campus to comply with constitutional mandates.

41. As president, Defendant Dever has the authority to review, approve, or reject requests to use campus facilities and grounds by students.

42. Defendant Dever not only authorized, approved, or implemented the policies used to restrict Mr. Parks' expression, but he also failed to stop any TNCC officials from applying those policies to Mr. Parks.

43. Defendant Dever is ultimately responsible for administration and policymaking at TNCC.

44. Defendant Dever is sued in his individual and official capacities.

45. Defendant Daniel Lufkin is, and was at all times relevant to this Complaint, Vice President of Student Affairs at Thomas Nelson Community College.

46. One of Defendant Lufkin's responsibilities as Vice President of Student Affairs is to

review and give final approval or disapproval to students' requests to engage in expression on campus.

47. In executing his duty to review these requests, Defendant Lukfin implements VCCS and TNCC policies and procedures regarding student expression on campus.

48. Defendant Lufkin participated in enforcing VCCS's and TNCC's policies and practices regarding student expression on campus against Mr. Parks when he desired to speak publicly in the open, outdoor areas of the TNCC campus.

49. Defendant Lufkin is sued in his individual and official capacities.

50. Defendant Vicki Richmond is, and was at all times relevant to this Complaint, Associate Vice President of Student Affairs at Thomas Nelson Community College.

51. One of Defendant Richmond's responsibilities as Associate Vice President of Student Affairs is to review and give final approval or disapproval to students' requests to engage in expression on campus.

52. In executing her duty to review these requests, Defendant Richmond implements VCCS and TNCC policies and procedures regarding student expression on campus.

53. Defendant Richmond enforced VCCS's and TNCC's policies and practices regarding student expression on campus against Mr. Parks when he desired to speak publicly in the open, outdoor areas of the TNCC campus.

54. Defendant Richmond is sued in her individual and official capacities.

55. Defendant Kadisia Archer is, and was at all times relevant to this Complaint, the Coordinator of Student Activities at TNCC.

56. As the Coordinator of Student Activities, Defendant Archer is charged with responsibility for enforcing VCCS's and TNCC's policies and practices governing student expression taking place within public facilities and on public property at the College.

57. Defendant Archer is responsible for initially processing and approving students' requests to engage in expression on campus before she presents them to Defendant Richmond for final review and approval or denial.

7

58. Defendant Archer enforced VCCS's and TNCC's policies and practices regarding student expression on campus against Mr. Parks when he desired to speak openly in the outdoor areas of the TNCC campus.

59. Defendant Archer is sued both in her individual and official capacities.

60. Defendant Kelvin Maxwell, is, and was at all times relevant to this Complaint, the Chief of Campus Police at TNCC.

61. As Chief of Campus Police, Defendant Maxwell is charged with responsibility for enforcing VCCS's and TNCC's policies and practices governing student expression taking place within public facilities and on public property at the College.

62. Defendant Maxwell is sued both in his individual and official capacities.

63. Defendant Frank Johnson, is, and was at all times relevant to this Complaint, a law enforcement officer for Campus Police at TNCC.

64. As a law enforcement officer, Defendant Johnson is charged with responsibility for enforcing VCCS's and TNCC's policies and practices governing student expression taking place within public facilities and on public property at the College.

65. Defendant Johnson enforced VCCS's and TNCC's policies and practices regarding student expression on campus against Mr. Parks when he desired to speak openly in the outdoor areas of the TNCC campus.

66. Defendant Johnson is sued both in his individual and official capacities.

## FACTUAL BACKGROUND

67. TNCC is a public community college organized and existing under the laws of the Commonwealth of Virginia and receives funding from the Commonwealth of Virginia to operate.

68. TNCC is one of twenty-three community colleges in the Virginia Community College System.

69. TNCC operates two campuses and a variety of regional learning centers.

70. TNCC's Hampton Campus is composed of various publicly-accessible buildings and outdoor areas, including streets, sidewalks, open-air quadrangles, and park-like lawns. A copy of the TNCC's Hampton Campus map is attached as Exhibit 1 to this Complaint. A Google Maps satellite view of TNCC's Hampton Campus is attached as Exhibit 2 to this Complaint.

71. TNCC's Hampton Campus is located on 86.5 acres, which is approximately 3,767,940 square feet.

72. TNCC's Hampton Campus has many suitable streets, sidewalks, open-air quadrangles and plazas, and park-like lawns where expressive activity will not interfere with or disturb the College's educational environment or access to buildings or sidewalks.

73. As an institution in the VCCS, TNCC is governed by Defendant DuBois and the Board Defendants.

74. As an institution in the VCCS, TNCC is governed by the policies that Defendant DuBois and the Board Defendants enact, and TNCC officials—including Defendants Dever, Lufkin, Richmond, and Archer—are tasked with enforcing, implementing, and executing those policies.

## I. DEFENDANTS' UNCONSTITUTIONAL POLICIES

### A. DEFENDANTS' CAMPUS DEMONSTRATION POLICIES

75. Defendants give TNCC officials unbridled discretion over whether, when, and where students and student organizations may speak and express themselves in the outdoor areas of campus.

76. It is VCCS's policy that students and student organizations must register with their community college's administration at least four days before engaging in speech or expression in the outdoor areas of campus.

77. It is VCCS's policy that "[e]ach campus organization participating in a demonstration must file three copies of the registration form (Table 6-1) in the office of the president of the college for all demonstrations 4 days in advance of the demonstration." A copy of VCCS's

policies regarding student development services, which are drawn from the VCCS *Policy Manual* and which contain VCCS's policies regarding campus demonstrations on pages 6-17 through 6-19, are attached to this Complaint as Exhibit 3 (hereafter "Campus Demonstration Policies"). *See* Ex. 3 at 019–021.

78. It is VCCS's policy that "[a]ll assemblies or demonstrations on the campus must have prior registration with the office of the president of the college."

79. It is Defendants' policy and practice to apply these Campus Demonstration Policies to individual students who want to speak to their peers in the open, outdoor areas of campus.

80. It is Defendants' policy and practice that only student organizations may engage in expressive activities in the open outdoor areas of campus; individual students who are not affiliated with a student organization may not do so, even if they register their activities with community college officials at least four days in advance.

81. Defendants prohibit students and student organizations from engaging in expressive activities in the open, outdoor areas of campus unless they first register their activities with community college officials at least four days in advance.

82. Defendants prohibit individual students from engaging in expressive activities in the open, outdoor areas of campus, even if they first register their activities with community college officials at least four days in advance, unless they can also demonstrate that their activities are affiliated with a student organization.

83. Neither VCCS nor TNCC posses any policies that set forth the criteria, factors, or standards that community college officials must use in deciding whether to accept or reject students' efforts to register their expressive activities.

84. When students seek to register a speech event four days in advance, they must complete a form identifying all student organizations that will participate in the event.

85. VCCS does not possess any policies that permit students or student organizations to engage in expressive activities on campus without revealing their identities.

86. It is VCCS's policy that officials at its community colleges (including TNCC) have

unbridled discretion to determine in which outdoor venues of campus students may engage in expressive activities.

87. When students seek to register a speech event four days in advance, they must identify the specific locations on campus (*i.e.*, "exact area of demonstration") that they intend to use.

88. When students seek to register a speech event four days in advance, they must agree that the "[p]recise boundaries [of the event] shall be set by agreement among the College administration, the organizations involved, and those in charge of any building specifically involved."

89. Neither VCCS nor TNCC possess any policies that set forth the criteria, factors, or standards that community college officials must use in deciding which areas of campus students may use for expressive activities.

90. It is VCCS's policy that "[s]tudents . . . who participate in . . . a . . . disorderly assembly are subject to suspension or dismissal."

91. It is Defendants' policy and practice that students who do not register their expressive activity with community college officials at least four days in advance are engaged in a disorderly or unauthorized assembly.

92. It is Defendants' policy and practice that students who are not affiliated with a student organization and who seek to engage in expressive activities on campus are engaged in a disorderly or unauthorized assembly, even if they attempt to register their expressive activities with community college officials at least four days in advance.

93. It is Defendants' policy and practice that students who do not limit their expressive activities to the precise locations community college officials set forth in advance are engaged in a disorderly or unauthorized activity.

94. VCCS's Campus Demonstration Policies were issued by Defendant DuBois or the Board Defendants, and they have the authority to modify or rescind those policies.

95. Defendants' Campus Demonstration Policies contain no guidelines or standards to limit the discretion of community college officials in granting, denying, relocating, or restricting

requests by students to engage in expressive activity.

96.   Defendants' Campus Demonstration Policies contain no deadlines or timetables in which community college officials must respond to a permit request.

97.   Defendants' Campus Demonstration Policies contain no options for community college officials to waive the four-day notice requirement when students want to speak spontaneously in response to recent or unfolding events.

98.   Defendants' Campus Demonstration Policies provide no avenue for students to appeal the space restrictions that community college officials impose on their expressive activities.

## B.   DEFENDANTS' STUDENT CODE OF CONDUCT

99.   TNCC implements VCCS's speech-restrictive Campus Demonstration Policies in part through its *Student Code of Conduct*.

100.   It is TNCC's policy and practice to enforce VCCS's Campus Demonstration Policies against its students.

101.   It is TNCC's policy that any student who fails to comply with its regulations and guidelines regarding student expression violates the *Student Code of Conduct*.   A copy of TNCC's *Student Handbook 2013–2014*, which includes the *Student Code of Conduct* on pages 48–49, is attached as Exhibit 4 to this Complaint. *See* Ex. 4 at 076–077.

102.   It is TNCC's policy that students who engage in behavior deemed a "violation" of the *Student Code of Conduct* "will be subject to disciplinary action." *See* Ex. 4 at 076.

103.   One of the "violations" of TNCC's *Student Code of Conduct* is "[f]ailure to comply with the College regulations/guidelines on student expression and demonstration." *See id.*

104.   It is TNCC's policy—as expressed in the *Student Code of Conduct*—that students wishing to engage in expression or demonstration on campus need to "contact the Vice president for Student Affairs." *See id.*

105.   It is TNCC's policy that students who fail to comply with VCCS's Campus Demonstration policies have violated the provision of the *Student Code of Conduct* that prohibits

12

students from failing "to comply with the College regulations/guidelines on student expression and demonstration."

106. Another "violation" of TNCCs' *Student Code of Conduct* is "[v]iolation of College policies or regulations governing . . . use of College facilities." *See id.*

107. It is TNCC's policy that students who fail to comply with VCCS's Campus Demonstration Policies have violated "College policies or regulations governing . . . use of College facilities," under the *Student Code of Conduct.*

## II. DEFENDANTS' UNCONSTITUTIONAL SILENCING OF MR. PARKS

108. In September 2013, Mr. Parks decided that he needed to inform his fellow students and other passersby of their need for salvation through Jesus Christ by preaching in the open, outdoor areas of the TNCC campus.

109. Mr. Parks desired to communicate his religious views to his fellow classmates and instructors at TNCC.

110. Mr. Parks desired to communicate his religious views to his fellow classmates and instructors at TNCC because of his sincerely-held religious beliefs and because he practices his religion by doing so.

111. To communicate his views, Mr. Parks went to the outdoor courtyard area bordered by Diggs Hall, Templin Hall, and Wythe Hall at TNCC's Hampton Campus (hereafter, "Courtyard") and began preaching.

112. Mr. Parks stood in a wide area that is open to public ingress and egress.

113. The Courtyard resembles a public plaza with tables and benches distributed around a wide, open area.

114. Mr. Parks was careful to stand in an area of the Courtyard that would not block the entrances and exits of any buildings, block pedestrian traffic, or create any congestion.

115. Mr. Parks chose to utilize the Courtyard because it is a central location on TNCC's Hampton Campus near the campus cafeteria, and thus, it is a hub of student traffic.

116. Many students linger in the Courtyard, eating or studying on the tables in the area or visiting with each other on the benches in the area.

117. When Mr. Parks preached in the Courtyard, he did not carry signs or utilize amplification. He merely spoke, using his unaided voice, for about forty or forty-five minutes to the students congregated in the area at the time.

118. When Mr. Parks preached in the Courtyard, he did not utilize inflammatory rhetoric or attack personally any individual.

119. Instead, Mr. Parks began by discussing God's existence and attributes, particularly His holiness and righteousness. From this, he then discussed how all men and women have fallen short of God's commands. And he concluded by explaining how Jesus Christ, whom the prophets in the Old Testament had foretold, had come to earth to die on the cross and rise again in order to provide men and women the only means of obtaining salvation and eternal life.

120. In the fall of 2013, Mr. Parks preached twice to students in the Courtyard without incident.

121. The third time Mr. Parks preached to students in the Courtyard, three uniformed officers from the TNCC Police Department—Defendant Johnson, Officer Patrick, and another officer—confronted him.

122. Defendant Johnson ordered Mr. Parks to cease preaching in the Courtyard.

123. When Mr. Parks inquired why he must stop preaching, Defendant Johnson explained that the content of his speech might offend someone.

124. Mr. Parks informed Defendant Johnson of his First Amendment right to preach and speak publicly on campus.

125. Though Mr. Parks thought Defendant Johnson's order was unjust and unconstitutional, he complied and ceased preaching.

126. About a week later, Mr. Parks again attempted to preach in the Courtyard.

127. While Mr. Parks was preaching, Defendant Johnson again confronted him.

128. Defendant Johnson reminded Mr. Parks that Defendant Johnson had previously told

him that he could not preach in the Courtyard.

129. Mr. Parks again informed Defendant Johnson of his First Amendment right to preach and speak publicly on campus.

130. Defendant Johnson also told Mr. Parks that if he wanted to preach in the Courtyard, he first needed to obtain permission from Defendant Archer.

131. Mr. Parks again complied with Defendant Johnson's order to cease preaching.

132. A few days later, Mr. Parks went to Defendant Archer's office to find out why he could not preach in the Courtyard without first obtaining her permission.

133. When Mr. Parks asked why he had been prevented from preaching, Defendant Archer showed him a list of violations from TNCC's *Student Code of Conduct*.   The document Defendant Archer showed Mr. Parks is attached to this Complaint as Exhibit 5.

134. The document that Defendant Archer showed Mr. Parks contains most of the violations listed in TNCC's *Student Code of Conduct* as found in Exhibit 4, with a few minor changes in wording.

135. When Mr. Parks asked which of the numerous violations listed in TNCC's *Student Code of Conduct* required him to stop preaching, Defendant Archer directed his attention to the provision addressing "[f]ailure to comply with the College regulations/guidelines on student expression and demonstrations."

136. When Mr. Parks asked which regulations, guidelines, or policies he had violated, Defendant Archer referred him to Defendant Richmond.

137. Mr. Parks then visited Defendant Richmond's office.

138. When Mr. Parks asked which regulations, guidelines, or policies prevented him from preaching in the Courtyard, Defendant Richmond directed him to several policies.

139. On information and belief, the policies Defendant Richmond showed Mr. Parks were VCCS's Campus Demonstration Policies. *See* Ex. 4.

140. After reading these policies, Mr. Parks argued that they did not prohibit him from preaching in the Courtyard.

141. Mr. Parks' arguments failed to convince Defendant Richmond, who still insisted that these policies required him to discontinue his preaching activities.

142. But Defendant Richmond stated that Mr. Parks could not engage in public oral communication or open-air preaching in the Courtyard or other open, outdoor areas of campus without first registering his activities with TNCC officials four days in advance and submitting to whatever space restrictions TNCC officials decide to impose.

143. Defendant Richmond also informed Mr. Parks that, because of VCCS and TNCC policies, he could not preach or engage in public oral communication in the Courtyard or other open, outdoor areas of campus as an individual. Instead, he would first have to join a student organization, and then that student organization could register Mr. Parks' expressive activities with TNCC officials four days in advance.

144. In early December 2013, Mr. Parks visited Defendant Richmond's office again, seeking to discuss with her the policies that prevented him from preaching in the Courtyard.

145. At that time, Defendant Richmond's secretary handed Mr. Parks a piece of paper, on which was printed the internet link to the policies that prevented him from preaching in the Courtyard. A copy of the paper that Defendant Richmond's secretary handed to Mr. Parks is attached to this Complaint as Exhibit 6.

146. On information and belief, Defendant Richmond instructed her secretary to deliver the document contained in Exhibit 6 to Mr. Parks.

147. The policies which Defendant Richmond linked in the document her secretary delivered to Mr. Parks are VCCS's Campus Demonstration Policies, the same policies set forth in Exhibit 3.

148. On information and belief, Defendant Richmond acted at Defendant Lufkin's direction or with Defendant Lufkin's approval in informing Mr. Parks that VCCS and TNCC policies prohibited him from preaching in the open, outdoor areas of campus unless he (1) joined a student organization, (2) convinced the student organization to register his expressive activities with TNCC officials at least four days in advance, and (3) submitted to whatever space

restrictions TNCC officials decided to impose.

149. Since meeting with Defendant Richmond, Mr. Parks has not attempted to preach or engage in other expressive activities in the Courtyard or other open, outdoor areas of the TNCC campus.

150. Though he has not done so, Mr. Parks desires to resume his open-air preaching in the Courtyard and other open, outdoor areas of campus at the earliest opportunity.

151. Mr. Parks would like to continue preaching not only in the Courtyard, but also in other open, outdoor areas of campus that are generally open to passersby.

152. Mr. Parks desires to engage in peaceful expressive activities on campus—including oral communication and literature distribution—without first registering his intent to do so four days in advance and without agreeing to limit his activities to the locations TNCC officials specify, but he has not done so for fear of punishment.

153. Mr. Parks has not attempted to preach or engage in other expressive activities in the Courtyard or other open, outdoor areas of the TNCC campus because numerous TNCC officials, including Defendants, have told him that doing so would violate VCCS and TNCC policies. Thus, he risks disciplinary action if he persists in preaching.

154. TNCC and VCCS policies state that Mr. Parks would expose himself to a range of disciplinary actions, including suspension or dismissal, if he continued to preach in the open, outdoor areas of the TNCC campus without first obtaining administrative permission.

155. Defendants' enforcement of VCCS's Campus Demonstration Policies and related provisions of TNCC's *Student Code of Conduct* against Mr. Parks burdens his speech for multiple reasons.

156. Mr. Parks wants to preach and discuss religious issues while he stands on public ways and open areas on TNCC's Hampton Campus without first having to notify TNCC officials and without having to abide by any location restrictions they choose to impose.

157. Mr. Parks' speech is further frustrated because he cannot preach or speak publicly at TNCC until he first registers his activities with TNCC officials and then restricts his activities to

the locations they specify.

158. Mr. Parks' speech is further frustrated because he cannot preach or speak publicly at TNCC until he first joins a student organization and persuades that organization to register his activities with TNCC officials.

159. The registration requirement, in and of itself, is unduly burdensome as it requires four days advanced notice for processing.

160. The registration requirement means that Mr. Parks may not engage in spontaneous or anonymous speech on campus.

161. It is repugnant to Mr. Parks that he, as an individual citizen and student at a public community college, must notify the government in order to speak on campus when he feels convicted by his religious faith to speak and preach on campus.

162. Mr. Parks also likes to spread his message about religion in reaction to current events.

163. Mr. Parks and all students at TNCC (and other VCCS institutions) require the ability to speak spontaneously in reaction to news. And yet, VCCS's Campus Demonstration Policies and the related provisions of TNCC's *Student Code of Conduct* prohibit such spontaneous speech because they force Mr. Parks to obtain a permit prior to speaking.

164. Mr. Parks is bound to comply with the terms of VCCS's Campus Demonstration Policies and TNCC's *Student Code of Conduct* at all times on campus.

165. Mr. Parks is not preaching or publicly discussing religious topics on campus due to VCCS's Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and Defendants' enforcement of those policies against him.

166. Mr. Parks is chilled in his ability to preach and discuss religious topics on campus due to VCCS's Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and Defendants' enforcement of those policies against him.

167. If not for VCCS's Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and the actions of Defendants, Mr. Parks would immediately return to the open, outdoor areas of the TNCC campus and preach and discuss religious topics with fellow

students and passersby.

168. Mr. Parks refrains for fear of punishment under VCCS's Campus Demonstration Policies and the related provisions of TNCC's *Student Code of Conduct*.

169. The fear of arrest or punishment severely limits Mr. Parks' constitutionally-protected expression on campus.

<u>**ALLEGATIONS OF LAW**</u>

170. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the Commonwealth of Virginia.

171. Defendants knew or should have known that by disallowing Mr. Parks' expressive activity on campus without him obtaining prior permission, and restricting his speech to zones determined by TNCC officials in their unbridled discretion, Defendants are violating his constitutional rights.

172. Mr. Parks is suffering irreparable harm from the policies and practices of Defendants which cannot be fully compensated by an award of money damages.

173. Mr. Parks has no adequate or speedy remedy at law to correct or redress the deprivation of his rights by Defendants.

174. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest.

175. Defendants have deprived, and continue to deprive, Plaintiff of his clearly established rights under the United States Constitution, as set forth in the causes of action below.

176. Unless the policies and conduct of Defendants are enjoined, Mr. Parks will continue to suffer irreparable injury.

177. Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Parks is entitled to appropriate relief invalidating VCCS's unconstitutional Campus Demonstration Policies and related provisions of TNCC's *Student Code of Conduct*.

### FIRST CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Right to Freedom of Speech
### (42 U.S.C. § 1983)

178.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–177 of this Complaint, as if set forth fully herein.

179.  Speech, including public oral expression, is entitled to comprehensive protection under the First Amendment.

180.  Religious speech—including public preaching—is also fully protected by the First Amendment.

181.  The First Amendment rights of free speech and press extend to campuses of state colleges.

182.  The sidewalks and open spaces of the TNCC campus are designated public fora—if not traditional public fora—for speech and expressive activities by students enrolled at TNCC.

183.  The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination in the public forums for student speech and expression on the campus of a public college.

184.  A public college's ability to restrict speech—particularly student speech—in a public forum is limited.

185.  The First Amendment's Free Speech Clause prohibits censorship of religious expression.

186.  The First Amendment prohibits the government from prohibiting or limiting speech because it might offend the sensibilities of listeners, and any governmental attempts to do so are inherently content and/or viewpoint based.

187.  Under the First Amendment's Free Speech Clause, a prior restraint on citizens' expression is presumptively unconstitutional, unless it (1) does not delegate overly broad licensing discretion to a government official, (2) contains only content and viewpoint neutral reasonable time, place, and manner restrictions, (3) is narrowly tailored to serve a significant governmental interest, and (4) leaves open ample alternative means for communication.

188.  Thus, the government may not regulate speech based on policies that permit arbitrary,

discriminatory, or overzealous enforcement.

189. Unbridled discretion to discriminate against speech based on its content or viewpoint violates the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice.

190. The First Amendment's Free Speech Clause guarantees a citizen the right to express his views anonymously and spontaneously.

191. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and their practice of requiring students to register their expressive activities with college officials and of restricting student speech to *ad hoc* speech zones violate the First Amendment facially and as applied because they are a prior restraint on speech in areas of campus that are traditional or designated public fora for TNCC students.

192. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and their practice of requiring students to register their expressive activities with college officials and of restricting student speech to *ad hoc* speech zones violate the First Amendment facially and as applied because they grant College officials unbridled discretion to discriminate against speech based on its content or viewpoint.

193. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and their practice of allowing only student organizations to register expressive activities with college officials violate the First Amendment facially and as applied because they prohibit students who are not affiliated with a student organization from engaging in any expressive activities on campus.

194. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and their practice of requiring students to register their expressive activities with college officials and of restricting student speech to *ad hoc* speech zones violate the First Amendment facially and as applied because they are vague and overbroad.

195. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices that require students to register a proposed expressive

21

activity at least four days in advance and that limit the activity to certain *ad hoc* speech zones are an unconstitutional "time," "place," and "manner" restrictions that violate Plaintiff's and other students' right to freedom of speech and expression because they are not content-neutral, they are not narrowly tailored to serve a significant government interest, and they do not leave open ample alternative channels of communication.

196. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and their practices of allowing only student organizations to register expressive activities with college officials are an unconstitutional "time," "place," and "manner" restrictions that violate Plaintiff's and other students' right to freedom of speech and expression because they prohibit students who are not affiliated with a student organization from engaging in any expressive activities on campus.

197. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices provide no guidelines or standards to limit the discretion of TNCC officials (or officials at other VCCS institutions) in granting, denying, relocating, or restricting requests by students to engage in expressive activity.

198. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices require students to register proposed expressive activities with Defendants and then delegate authority to Defendants to determine where students may engage in these expressive activities, thus giving Defendants unbridled discretionary power to limit student speech in advance of such expression on campus and to do so based on the content and viewpoint of the speech.

199. These grants of unbridled discretion to TNCC officials violate the First Amendment because they create a system in which speech is reviewed without any standards, thus giving students no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

200. The First Amendment's prohibition against content and viewpoint discrimination requires Defendants to provide adequate safeguards to protect against the improper exclusion,

restriction, or relocation of student speech based on its content or viewpoint.

201. Because Defendants have failed to establish neutral criteria governing the granting, denial, or relocation of student speech applications (including requests to use campus facilities), there is a substantial risk that TNCC officials will engage in content and viewpoint discrimination when addressing those applications.

202. Defendants exercised the unbridled discretion granted them under VCCS's Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices when they prohibited Plaintiff from preaching in the open, outdoor areas of campus without first registering his activities with TNCC officials.

203. VCCS's Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices do not contain any definite time period in which TNCC officials must grant or deny students' requests to engage in expressive activities.

204. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices that require prior approval to speak prohibit students from anonymously communicating with passersby.

205. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices that require four days advanced notice to speak prohibit spontaneous expression.

206. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices are neither reasonable nor valid time, place, and manner restrictions on speech because they are not content-neutral, they are not narrowly tailored to serve a significant government interest, and they do not leave open ample alternative channels of communication.

207. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices are also overbroad because they prohibit and restrict protected expression.

208. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student*

*Code of Conduct*, and associated practices unconstitutionally censor or restrict all private speech (including, but not limited to, literature distribution) that occurs outside the speech zones that Defendants, in their unbridled discretion, designate, and they require students to register all expressive activities with Defendants in advance.

209. The overbreadth of Defendants' policies and related practices chills the speech of students not before the Court who seek to engage in private expression (including preaching and public speaking) in the open, outdoor area of campus.

210. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices chill, deter, and restrict Plaintiff from freely expressing his religious beliefs.

211. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices do not satisfy strict scrutiny because they support no compelling governmental interest and they are not narrowly tailored to meet any such concerns.

212. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices violate Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution.

213. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer irreparable harm. He is entitled to an award of monetary damages and equitable relief.

214. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated his First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
**Violation of Plaintiff's Fourteenth Amendment Right to Due Process of Law**
**(42 U.S.C. § 1983)**

215. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–177 of

this Complaint, as if set forth fully herein.

216. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to due process of law and prohibits Defendants from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination in Defendants' handling of Plaintiff's preaching and speaking.

217. The government may not regulate speech based on overbroad policies that encompass a substantial amount of constitutionally protected speech.

218. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices prohibit a substantial amount of constitutionally protected speech in that they prohibit students who are not affiliated with a student organization from engaging in any expressive activities on campus.

219. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices prohibit a substantial amount of constitutionally protected speech in that they prohibit students from engaging in expressive activities in the public fora of campus unless they have registered their activities with community college officials at least four days in advance and submitted to whatever *ad hoc* speech zones those officials decided to impose.

220. The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

221. The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

222. The government also may not regulate speech in ways that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

223. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices contain no criteria to guide administrators when deciding whether to grant, deny, relocate, or restrict student speech (including preaching and public speaking) on campus.

224. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants.

225. The lack of criteria, factors, or standards in Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices renders these policies and practices unconstitutionally vague and in violation of Plaintiff's right to due process of law under the Fourteenth Amendment.

226. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer irreparable harm. He is entitled to an award of monetary damages and equitable relief.

227. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated his Fourteenth Amendment right to due process of law and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### Violation of Plaintiff's Right to Free Exercise of Religion
### (Va. Code § 57-2.02)

228. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–177 of this Complaint, as if set forth fully herein.

229. Virginia's Religious Freedom Restoration Act, Va. Code § 57-2.02, prohibits the government from "substantially burden[ing] a person's free exercise of religion even if the burden results from a rule of general applicability unless it is (i) essential to further a compelling governmental interest and (ii) the least restrictive means of furthering that compelling governmental interest."

230. Defendants apply VCCS's Campus Demonstration Policies and the related provisions of TNCC's *Student Code of Conduct* in a way that substantially burdens Plaintiff's free exercise of religion.

231. Plaintiff desires to share his religious views with his peers on campus based on his sincerely-held religious beliefs and because he desires to exercise his religion.

232. Defendants substantially burdened Plaintiff's free exercise of religion by applying VCCS's Campus Demonstration Policies and the related provisions of TNCC's *Student Code of Conduct* to prohibit Plaintiff from sharing his religious views anywhere on campus without first registering his activities with TNCC officials at least four days in advance and then submitting to whatever *ad hoc* speech zones TNCC officials decided to impose.

233. Defendants substantially burdened Plaintiff's free exercise of religion by applying VCCS's Campus Demonstration Policies and the related provisions of TNCC's *Student Code of Conduct* to prohibit Plaintiff from sharing his religious views anywhere on campus without first joining a student organization and persuading that organization to register his religious expressive activities with TNCC officials.

234. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices cannot be justified by a compelling state interest and are not narrowly tailored to advance any such interest.

235. Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and related practices violate Plaintiff's right to free exercise of religion as guaranteed by the Virginia Religious Freedom Restoration Act.

236. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer irreparable harm. He is entitled to an award of declaratory and injunctive relief.

237. Pursuant to Virginia Code § 57-2.02, Plaintiff is entitled to a declaration that Defendants violated his right to free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants

and provide Plaintiff with the following relief:

(A)   A declaratory judgment that the Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices, facially and as-applied, violate Plaintiff's rights under the First Amendment and the Virginia Religious Freedom Restoration Act;

(B)   A declaratory judgment that the Defendants' Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices, facially and as-applied, violate Plaintiff's rights under the Fourteenth Amendment and the Virginia Religious Freedom Restoration Act;

(C)   A declaratory judgment that the Defendants' restriction of Plaintiff's open-air preaching and speaking violated Plaintiff's rights under the First and Fourteenth Amendments and the Virginia Religious Freedom Restoration Act;

(D)   A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from enforcing VCCS's Campus Demonstration Policies, the related provisions of TNCC's *Student Code of Conduct*, and associated practices challenged in this Complaint;

(E)   Compensatory and nominal damages for the violation of Plaintiff's First and Fourteenth Amendment rights;

(F)   Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988 and Va. Code § 57-2.02; and

(G)   All other further relief to which Plaintiff may be entitled.

Respectfully submitted this 12 day of March, 2014,

*/s/ Steven C. Taylor*

STEVEN C. TAYLOR
Virginia Bar No. 31174
LAW OFFICE OF STEVE TAYLOR
133 Mount Pleasant Road
Chesapeake, Virginia 23322
Telephone: (757) 482–5705
Facsimile: (757) 546–9535
stevetaylor@call54legal.com
*Local Counsel*

KEVIN H. THERIOT*
Virginia Bar No. 38324
Kansas Bar No. 21565
Texas Bar No. 00788908
ALLIANCE DEFENDING FREEDOM
15192 Rosewood
Leawood, Kansas 66224
Telephone: (913) 685–8000
Facsimile: (913) 685–8001
ktheriot@alliancedefendingfreedom.org

DAVID A. CORTMAN*
Georgia Bar No. 188810
TRAVIS C. BARHAM*
Arizona Bar No. 024867
Georgia Bar No. 753251
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE, Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
dcortman@alliancedefendingfreedom.org
tbarham@alliancedefendingfreedom.org

DAVID J. HACKER*
California Bar No. 249272
Illinois Bar No. 6283022
ALLIANCE DEFENDING FREEDOM
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 932–2850
Facsimile: (916) 932–2851
dhacker@alliancedefendingfreedom.org

*Application for *pro hac vice* admission to be
filed.

**ATTORNEYS FOR PLAINTIFF**

## DECLARATION UNDER PENALTY OF PERJURY

I, CHRISTIAN PARKS, a citizen of the United States and a resident of the Commonwealth of Virginia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this __6__ day of March, 2014, at Chesapeake, Virginia.

_Christian Parks_

CHRISTIAN PARKS